```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/16/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                                     :
GARY KOOPMANN, TIMOTHY KIDD, and VICTOR        :
PIRNIK,                                                              :
                                                                     :          18-CV-3460 (JMF)
                                        Plaintiffs,                  :
                                                                     :          OPINION AND ORDER
              -v-                                                    :
                                                                     :
UNITED STATES DEPARTMENT OF                     :
TRANSPORTATION et al.,                          :
                                                                     :
                                        Defendants.                 :
                                                                     :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The United States Department of Transportation ("USDOT"), like most federal agencies,

has enacted a set of regulations — known as "*Touhy* regulations" after the Supreme Court case

that spawned them — governing when its employees may be called by private parties to testify in

court.  On their face, USDOT's regulations apply to both "current" and "former" employees.

The principal question is this case is whether application of the regulations to "former"

employees is lawful, as the statute pursuant to which the regulations were enacted — the

Housekeeping Statute, 5 U.S.C. § 301 — speaks only of "employees."  The case arises out of

another case, *Pirnik v. Fiat Chrysler Automobiles N.V.*, 15-CV-7199 (JMF) (S.D.N.Y.)

("*Pirnik*"), in which Plaintiffs here bring securities-fraud claims against Fiat Chrysler

Automobiles ("FCA") and other defendants.  In an effort to obtain evidence concerning FCA's

communications with the National Highway Traffic Safety Administration ("NHTSA"), a part of

USDOT, Plaintiffs sought to depose a former NHTSA employee, and USDOT — invoking its

*Touhy* regulations — denied the request.  Pursuant to the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 500 *et seq.*, Plaintiffs bring this suit to challenge that denial as "arbitrary, capricious, an abuse of discretion, and in excess of [USDOT's] statutory jurisdiction." (Docket No. 1 ("Compl.") ¶ 59). Defendants now move to dismiss or, in the alternative, for summary judgment; Plaintiffs cross-move for summary judgment. (Docket Nos. 23, 25).

Based on the text, structure, and purpose of the Housekeeping Statute, the Court concludes that USDOT's *Touhy* regulations are unlawful to the extent that they apply to former employees. Accordingly, and for the other reasons stated below, Plaintiffs' motion for summary judgment is GRANTED, and Defendant's motion is DENIED.

## LEGAL BACKGROUND

"The antecedents" of today's Housekeeping Statute "go back to the beginning of the Republic, when statutes were enacted to give heads of early Government departments authority to govern internal department affairs." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979). Those early laws "were consolidated into one statute in 1874 and the current version of the statute was enacted in 1958." *Id.* The current version provides in full as follows:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301. Pursuant to that statute, USDOT promulgated regulations "governing the testimony of an employee in legal proceedings." Testimony of Employees of the Department and Production of Records in Legal Proceedings, 49 C.F.R. § 9.1(a) (2017). These regulations —commonly known as "*Touhy* regulations" after the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) — establish "procedures to be followed when an employee is issued a subpoena, order or other demand . . . by a court or other competent

authority, or is requested by a private litigant, to provide testimony or produce records concerning information acquired in the course of performing official duties or because of the employee's official status." 49 C.F.R. § 9.1(a). Generally speaking, they prohibit any USDOT employee from "provid[ing] testimony or produc[ing] any material contained in the files of the Department, or disclos[ing] any information or produc[ing] any material acquired as part of the performance of that employee's official duties." *Id.* § 9.5.

In a case between private litigants, however, when an employee receives a subpoena or other demand to testify or produce records, "agency counsel, in his or her discretion, may grant the employee permission to testify or produce records" — but "only if the purposes of this part are met or agency counsel determines that an exception is appropriate." *Id.* § 9.11(b). Section 9.1(b), in turn, identifies five "purposes of this part": (1) "[c]onserv[ing] the time of employees for conducting official business"; (2) "[m]inimiz[ing] the possibility of involving the Department in controversial issues not related to its mission"; (3) "[m]aintain[ing] the impartiality of the Department among private litigants"; (4) "[a]void[ing] spending the time and money of the United States for private purposes"; and (5) "protect[ing] confidential, sensitive information and the deliberative processes of the Department." *Id.* § 9.1(b). Finally, Section 9.1(c) defines when an "exception" may be appropriate — namely, "when the deviation will not interfere with matters of operational or military necessity, and when agency counsel determines that" (1) the exception "is necessary to prevent a miscarriage of justice"; (2) "[t]he Department has an interest in the decision that may be rendered in the legal proceeding"; or (3) "[t]he exception is in the best interest of the Department or the United States." *Id.* § 9.1(c).

Most significant for purposes of this case, USDOT's *Touhy* regulations define "employee" to include "any current *or former* officer or employee of the Department." *Id.* § 9.3

(emphasis added).  Notably, until 1993, the definition of "employee" did not include the words "or former."  In that year, however, USDOT amended its regulations to (among other things) extend to the testimony of former employees.  *See* Testimony of Employees of the Department and Production of Records in Legal Proceedings ("Notice of Proposed Rulemaking"), 57 Fed. Reg. 9224 (March 17, 1992) (proposing the amendment); Testimony of Employees of the Department and Production of Records in Legal Proceedings ("Notice of Final Rule"), 58 Fed. Reg. 6719 (Feb. 2, 1993).  In USDOT's final notice of the new language, the agency explained that it "believes that it possesses ample authority under the broad language of 5 U.S.C. [§] 301 to enlarge the definition of Department employees in its regulations."  Notice of Final Rule, 58 Fed. Reg. at 6722.  Further, USDOT wrote, "5 U.S.C. [§] 301 does not exclude former employees or contractors from the realm of its coverage."  *Id.*

## FACTUAL BACKGROUND

In *Pirnik*, Plaintiffs claim that "FCA and certain of its officers and executives repeatedly assured investors that FCA was compliant with vehicle safety and emissions regulations." (Compl. ¶ 12).  Plaintiffs allege that these representations were materially false and/or misleading because FCA ignored various safety obligations and misled federal regulators, including NHTSA.  Accordingly, at least some of Plaintiffs' allegations in *Pirnik* turn on FCA's compliance and communication with NHTSA.  (*Id.*).

On February 6, 2018, Plaintiffs' counsel issued a subpoena to Robert Garris, a former NHTSA employee.  (*Id.* ¶¶ 1, 21).  Garris had worked in NHTSA's Recall Management Division, where he conducted investigations regarding the performance of safety recalls initiated by vehicle manufacturers, including a recall initiated by FCA.  (*Id.* ¶¶ 14-15).  Pursuant to the USDOT's *Touhy* regulations, Plaintiffs' counsel submitted a request to NHTSA to take Garris's

deposition.  (*Id.* ¶ 23).  On March 6, 2018, NHTSA denied that request by letter, stating that it

"seeks to delve behind the formal record," that Garris would "have little or no [relevant]

knowledge," and that Plaintiffs could obtain evidence of communications between NHTSA and

the FCA defendants from the FCA defendants themselves.  (Compl., Ex. 2 ("Denial Letter"), at

3-4).  NHTSA acknowledged that Garris was "a former employee" and that his testifying would

thus "not divert him from performing any governmental duties," but concluded that other

NHTSA employees would "have to take time away from their official duties to prepare for the

deposition, as well as travel to them."  (*Id.* at 4).  Balancing the "stated need for the testimony of

Mr. Garris" against the purposes of USDOT's regulations, NHTSA therefore denied the request.

(*Id.* at 5).

## LEGAL STANDARDS

The APA authorizes a reviewing court to "hold unlawful and set aside agency action,

findings, and conclusions found to be . . . arbitrary [or] capricious," "contrary to constitutional

right," "in excess of statutory jurisdiction," or "without observance of procedure required by

law."  5 U.S.C. § 706(2)(A)-(D).  Where, as here, "a party seeks review of agency action under

the APA, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a

question of law."  *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal

quotation marks omitted); *see also Just Bagels Mfg. v. Mayorkas*, 900 F. Supp. 2d 363, 372 n.7

(S.D.N.Y. 2012).  While the usual summary judgment standard under Rule 56 of the Federal

Rules of Civil Procedure does not apply in such cases, *see Ass'n of Proprietary Colls. v. Duncan*,

107 F. Supp. 3d 332, 344 (S.D.N.Y. 2015) (citing *UPMC Mercy v. Sebelius*, 793 F. Supp. 2d 62,

67 (D.D.C. 2011), summary judgment is nonetheless "generally appropriate," as "[t]he question

whether an agency's decision is arbitrary and capricious" or in excess of statutory jurisdiction "is

a legal issue amenable to summary disposition," *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (internal quotation marks omitted).

## DISCUSSION

As noted, the principal question presented here is whether USDOT's *Touhy* regulations are consistent with the Housekeeping Statute.  That question is governed by the "familiar two-step process" set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* ("*Chevron*"), 467 U.S. 837, 845 (1984).  *Cmty. Health Sys., Inc. v. Burwell*, 113 F. Supp. 3d 197, 211 (D.D.C. 2015); *accord Ass'n of Proprietary Colls.*, 107 F. Supp. 3d at 358.  Under *Chevron*, the Court must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  That is, using "traditional tools of statutory construction," the Court must ascertain if "Congress had an intention on the precise question at issue" that "must be given effect."  *Id.* at 843 n.9.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842-43; *see also, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) ("If the statutory language is unambiguous and 'the statutory scheme is coherent and consistent . . . [t]he inquiry ceases.'" (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)).  If, however, "the statute is silent or ambiguous with respect to the specific issue," the Court proceeds to the second step of the *Chevron* analysis, asking "whether the agency's answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.  A court may not defer to an interpretation that is "arbitrary, capricious, or manifestly contrary to the statute."  *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) (internal quotation marks omitted).

Thus, the Court's initial task is to determine — based on "the statutory text, structure, and purpose as reflected in its legislative history," *Catskill Mountains Chapter of Trout Unltd., Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 512 (2d Cir. 2017) — whether the Housekeeping Statute authorizes USDOT to establish rules with respect to the testimony of "former" employees.  First, the statutory term "employees" is most naturally read to mean those having an existing employment relationship with the agency in question — i.e., *current* employees.  *Black's Law Dictionary*, for example, defines "employee" as "[s]omeone who *works*" — present tense — "in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."  Black's Law Dictionary (10th ed. 2014) (emphasis added).  Along the same lines, dictionary.com defines "employee" as "a person working for another person or a business firm for pay." https://www.dictionary.com/browse/employee?s=t (last visited August 14, 2018).  And those definitions accord with common sense and ordinary usage.  *See United States v. Kinzler*, 55 F.3d 70, 72 (2d Cir. 1995) (stating that, in interpreting a statute, a court should give words their "ordinary, contemporary, common meaning" (internal quotation marks omitted)).  If a business posts a sign on a door stating "Employees Only," it would plainly be unreasonable for a former employee to construe that as an invitation and enter.  Indeed, a former employee who did so could undoubtedly be charged with trespassing, and could not be heard to complain that the sign was ambiguous, let alone an invitation to enter.  *See, e.g.*, *State v. Laviollette*, 826 P.2d 684, 685 (Wash. 1992) (en banc) (discussing the burglary conviction of a former employee who entered into his former employer's building "through an employee's entrance marked 'Employees Only'").

The more natural reading of "employees" to mean current employees alone is reinforced by the Housekeeping Statute as a whole.  For one thing, the statute does not refer simply to "employees," but to "the *conduct* of [the agency's] employees."  5 U.S.C. § 301 (emphasis added).  Given the breadth of the term "conduct," it is sensible, if not necessary, to read "employees" narrowly; to do otherwise would suggest a grant of authority to federal agencies that goes well beyond what history and reason would suggest.  On top of that, the narrower construction of "employees" is support by "the established interpretative canons of *noscitur a sociis* and *ejusdem generis*," which provide that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384-85 (2003) (internal quotation marks and brackets omitted); *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("The maxim *noscitur a sociis* . . . is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.").  Put differently, "a word is known by the company it keeps," *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (plurality opinion), and here, that company suggests that Congress did not intend for the "employees" to include former employees.  In addition to "the conduct of its employees," the Housekeeping Statute authorizes each agency head to prescribe regulations "for the government of his department, . . . the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property."  5 U.S.C. § 301.  With the possible exception of the last item — "the custody, use, and preservation of its records, papers, and property" — those items are plainly temporally limited to the present, and indicate that the statute is intended to give an agency authority to regulate its own day-to-day affairs.  Nothing in the statute as a

whole suggests that Congress intended for its grant of authority to extend to regulation of the conduct of anyone who was ever employed by the agency without any temporal limitation.

The Court could stop there, but as it happens the purpose of the statute as reflected in its history points in the same direction. That history was recounted by the Supreme Court in *Chrysler Corp.* As noted, the Court traced the antecedents of today's Housekeeping Statute "back to the beginning of the Republic, when statutes were enacted to give heads of early Government departments authority to govern internal departmental affairs." *Chrysler Corp.*, 441 U.S. at 309; *see also id.* at 309 n.39 ("'The law has been called an office "housekeeping" statute, enacted to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents.'" (quoting H.R. Rep. No. 85-1461 ("House Report") at 1 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352). The statute was amended most recently in 1958 due to "congressional concern that agencies were invoking § 301 as a source of authority to withhold information from the public." *Id.* at 310. Specifically, committee reports and remarks on the floor reveal Congress's belief "that [§ 301] originally was adopted in 1789 to provide for the day-to-day office housekeeping in the Government departments, but through misuse it has become twisted into a claim of authority to withhold information.'" *Id.* at 310 n.41 (quoting House Report at 12). To "return" the statute "to what appears to have been the original purpose for which it was enacted in 1789," Congress thus added a second sentence, providing that it "does not authorize withholding information from the public or limiting the availability of records to the public." House Report at 1. "Given this long and relatively uncontroversial history, and the terms of the statute itself," the Court

summarized, the Housekeeping Statute "seems to be simply a grant of authority to the agency to regulate its own affairs."  *Chrysler Corp.*, 441 U.S. at 309.[1]

In short, the text, structure, and purpose of the Housekeeping Statute all compel the conclusion that the phrase "conduct of its employees" refers to current employees alone and, thus, that USDOT's regulations regulating when "employees" may testify are invalid to the extent they purport to apply to former employees.  Notably, the few courts to have considered the issue presented here have all reached the very same conclusion.  *See La. Dep't of Transp. & Dev. v. United States Dep't of Transp.*, No. 15-CV-2638 (RGJ), 2015 WL 7313876 (W.D. La. Nov. 20, 2015); *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 917 (E.D. Pa. 1979) (stating in *dictum* that former employees could be deposed because agency regulations to the contrary were "based upon 5 U.S.C. § 301, which on its face applies only to employees and not former employees of government agencies and departments"); *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 644 (2011) (stating in *dictum* that the agency's *Touhy* regulations could not be applied to former employees because "the language of the statute at 5 U.S.C. § 301 authorizes prescribing regulations for 'the conduct of its employees,' that is, present employees").  In fact, *Louisiana Dep't of Transportation & Development* involved the very same USDOT regulations at issue here.  Looking to the *Black's Law Dictionary* definitions of "employee" and "public employee," the United States District Court for the Western District of

---

[1]    Contrary to Defendants' suggestion, the Supreme Court's decision in *Touhy* cannot be read to suggest that one purpose of the statute is to "enabl[e] the executive branch to act as a gatekeeper for the disclosure of government information."  (Docket No. 24 ("Defs.' Br."), at 11-12).  Separate and apart from the fact that such a reading would be at odds with the 1958 amendment, the question presented in *Touhy* was merely one of internal organization — whether, in accordance with the version of the Housekeeping Statute then in effect, a department head could assume authority for deciding whether a "subordinate[]" should obey or challenge a subpoena.  340 U.S. at 467-68.

Louisiana concluded that "the term 'employee,' in its common usage, contemplates someone who works, *i.e*, currently works, or is currently employed, not someone retired from employment." 2015 WL 7313876, at *7. The Court acknowledged the "interests and concerns" raised by the agency in response to the plaintiff's *Touhy* request, but ultimately concluded that it was "bound by the plain terms of the" statute. *Id.* "The term 'employees' is not ambiguous," the Court declared, "and, thus, USDOT has no authority to extend that definition to the conduct of former employees." *Id.*

In arguing that USDOT's regulations are authorized by the Housekeeping Statute, Defendants make two arguments, neither of which is ultimately persuasive. The first, and by far more substantial, relies on the Supreme Court's decision in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), and lower court decisions concerning the meaning of "employees" in various employment statutes. (Defs.' Br. 11-15). The question in *Robinson* was "whether the term 'employees,' as used in § 704(a) [of Title VII of the Civil Rights Act of 1964, which prohibits retaliation], includes former employees," such that the petitioner could "bring suit against his former employer for postemployment actions allegedly taken in retaliation for petitioner's having" filed a claim of discrimination under the statute. 519 U.S. at 339. The Court observed that, "[a]t first blush, the term 'employees' in § 704(a) would seem to refer to those having an existing employment relationship with the employer in question." *Id.* at 341. Significantly, however, the Court concluded that "[t]his initial impression" did "not withstand scrutiny in the context of § 704(a)." *Id.* "First," the Court reasoned, "there is no temporal qualifier" in either Section 704(a) or in Title VII's definition of the term "employee" that "would make plain that § 704(a) protects only persons still employed at the time of the retaliation." *Id.* at 341-42. In so reasoning, the Court distinguished *Walters v. Metropolitan Educational Enterprises, Inc.*, 519

U.S. 202 (1997), which had "held that the term 'employees'" in *another* section of Title VII was limited "to those persons with whom an employer has an existing employment relationship." 519 U.S. at 341 n.2.  The section in *Walters*, the Court explained, included "words specify[ing] the time frame in which the employment relationship must exist, and thus the specific context of that section did not present the particular ambiguity at issue in the present case." *Id.*

In addition, the *Robinson* Court observed that "a number of other provisions in Title VII use the term 'employees' to mean something more inclusive or different than 'current employees.'" *Id.* at 342.  For instance, the Court noted, several provisions authorize the "'reinstatement or hiring of employees.'" *Id.* (quoting 42 U.S.C. §§ 2000e-5(g)(1), 2000e-16(b)).  "[B]ecause one does not 'reinstat[e]' current employees, that language necessarily refers to former employees.  Likewise, one may hire individuals *to be* employees, but one does not typically hire persons who already *are* employees." *Id.*  The Court acknowledged that "there are sections of Title VII where, in context, use of the term 'employees' refers unambiguously to a current employee." *Id.* at 343.  "But those examples," the Court held, "at most demonstrate that the term 'employees' may have a plain meaning in the context of a particular section — not that the term has the same meaning in all other sections and in all other contexts." *Id.* It follows that "the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Id.*  Accordingly, the Court looked to "[t]he broader context provided by other sections of the statute" and the remedial purpose of Title VII generally to resolve the ambiguity.  *Id* at 345-46.  "[E]xclusion of former employees from the protection of § 704(a)," the Court ultimately concluded, "would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining . . . , and would

provide a perverse incentive for employers to fire employees who might bring Title VII claims." *Id.* at 346.  Accordingly, "employees" in Section 704(a) includes former employees.

*Robinson* and the lower court cases of a similar ilk cited by Defendants do "tend to rebut a claim that the term 'employee' has some intrinsically plain meaning."  *Id.* at 344 n.4; *see also NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 124 (1944) (observing that the word "employee" "is not treated by Congress as a word of art having a definite meaning" (internal quotation marks omitted)).  But they also establish that use of the term "employee" *can* "refer[] unambiguously to a current employee."  *Robinson*, 519 U.S. at 343; *see Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1310 (11th Cir. 2001) (cautioning against relying on cases interpreting the term "employees" in the context of a different statute, noting that "statutes differ in their language, their purposes, and their scope of protection" and that "[t]he term 'employee'" may have different meanings in different acts, or even in different provisions of the same act").  And ultimately they reinforce, rather than undermine, the Court's conclusion that use of "employees" in the Housekeeping Statute is one such instance.  After all, to resolve the ambiguity in "the term standing alone," *Robinson*, 519 U.S. at 343, the *Robinson* Court looked first to "the specific context in which [the] language is used, and the broader context of the statute as a whole," *id.* at 341-45, and ultimately to the "broader context of Title VII and the primary purpose of § 704(a)," *id.* at 345-46.  And here, as discussed above, those sources reinforce the conclusion that the term "employees" in the context of the Housekeeping Statute is unambiguous and does not extend as far as the term does in Section 704(a) of Title VII.

Indeed, it is striking that *all* of the cases cited by Defendants, including *Robinson*, involved laws intended to protect employees in the workplace.  *See Robinson*, 519 U.S. at 339 (Title VII); *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1088 (5th Cir.

1987) (Age Discrimination in Employment Act); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139,

140-41 (6th Cir. 1977) (Fair Labor Standards Act); *Castellano v. City of N.Y.*, 142 F.3d 58, 67-70

(2d Cir. 1998) (Americans with Disabilities Act); *Smith*, 273 F.3d at 1307-13 (Family and

Medical Leave Act); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 6, 10-11 (1st Cir. 1998)

(same); *see also Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1054-55 (2d Cir. 1978) (Title

VII).  Not surprisingly, courts in those cases have tended to eschew "a narrow construction" of

the term "employee" on the ground that such a construction "would not give effect to the

statute's purpose, which is to furnish a remedy against an employer's use of discrimination in

connection with a prospective, present, or past employment relationship to cause harm to

another."  *Pantchenko*, 581 F.2d at 1055; *see, e.g.*, *Dunlop*, 548 F.2d at 142 (relying on "the

broad purposes and clear policies of the Fair Labor Standards Act" to conclude that the term

"employee" in that statute's anti-retaliation provision includes a former employee).  By contrast,

the Housekeeping Statute is "simply a grant of authority to the agency to regulate its own

affairs," *Chrysler Corp.*, 441 U.S. at 309, and there is no similar reason to construe its use of the

term "employees" as broadly.  In fact, construing the statute to mean that a person who works for

a federal agency, however briefly, is forever subject to that agency's regulatory authority would

raise a host of practical — if not constitutional — questions.  *Cf. United States v. Marchetti¸*466

F.2d 1309, 1317 (4th Cir. 1972) (recognizing that the First Amendment sets limits on the

government's authority to regulate the speech of a former federal employee).  Absent a clearer

indication in the statute, there is no basis to conclude that Congress intended such a result.

Defendants second argument is more easily rejected.  They contend that USDOT's

"power to apply its *Touhy* regulations to former employees is also grounded in section 301's

grant of authority to each agency to regulate the 'use . . . of [agency] property,'" as the term

"property" includes "even intangible property, such as patents, trademarks, and information learned in the course of government employment." (Defs.' Br. 16). But that novel reading of the Housekeeping Statute cannot be squared with the 1958 amendment, which clarified that the statute "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301.[2]   Moreover, taken to its logical conclusion, it would authorize federal agencies to promulgate regulations covering not only former employees, but anyone who became privy to "official government information" — including members of the press (or other branches of the federal government). That would be absurd and, again, would raise a host of practical — if not constitutional — questions. And once again, absent a clearer indication in the statute, there is no basis to conclude that Congress intended such a result.

## CONCLUSION

In sum, the text, structure, and purpose of the Housekeeping Statute lead to only one reasonable conclusion: that the term "employees" in the statute refers solely to current employees. It follows that USDOT's *Touhy* regulations are invalid to the extent that they extend to former employees and that the Denial Letter — which was based on those regulations — was arbitrary and capricious and in excess of statutory jurisdiction. *See* 5 U.S.C. § 706.

That does not necessarily mean, however, that Plaintiffs are entitled to depose Garris in *Pirnik*. That is because Defendants could conceivably challenge the subpoena pursuant to Rule

---

[2]    Contrary to Defendants' suggestion (Defs.' Br. 17), neither *Bancorp v. FDIC*, No. 99-CV-3799 (JCL), 1999 WL 1332312 (D.N.J. Nov. 10, 1999), nor *Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, 08-CV-5582 (JHR/JS), 2009 WL 2982632 (D.N.J. Sept. 10, 2009), held that the Housekeeping Statute's reference to "property" authorizes agencies to regulate the testimony of former employees. Neither case involved a challenge to *Touhy* regulations as inconsistent with the Housekeeping Statute. In fact, neither case even cited, let alone discussed, the statute. Moreover, the Housekeeping Statute was not the sole basis for the regulations at issue in *Bancorp*, *see* Organization and Functions, Availability and Release of Information, Contracting Outreach Program, 63 Fed. Reg. 62927-02 (Nov. 10, 1998), as it is here.

45 of the Federal Rules of Civil Procedure, which authorizes a court to "quash or modify a subpoena" on various grounds.  Fed. R. Civ. P. 45(d)(3)(A).  In fact, the parties brief the question of whether Rule 45 would justify quashing the subpoena for Garris's testimony (*see* Defs. Br. 22; Docket No. 26, at 14-22), albeit only because some courts have held that Rule 45 — rather than the APA — provides the relevant standard to assess the merits of an agency's refusal to complay with a subpoena.  *See, e.g.*, *In re SEC ex rel. Glotzer*, 374 F.3d 184, 190-92 (2d Cir. 2004) (discussing cases).  In light of that, and the fact that this Court is presiding over *Pirnik* as well, there is an argument for just deciding the issue here.  But, strictly speaking, the proper means to raise an objection under Rule 45 would be by motion in *Pirnik*.  Moreover, while the Court has no doubt that Defendants have standing to challenge the subpoena to Garris on one Rule 45 ground that they invoke — namely, that it calls for disclosure of information protected by the deliberative-process privilege, which is held by the Government, *see, e.g.*, *Pleasant Gardens Realty Corp.*, 2009 WL 2982632, at *2-5 & n.10; *see also, e.g.*, *Mir v. Med. Bd. of Cal.*, No. 12-CV-2340 (GPC) (DHB), 2016 WL 3406118, at *3 (S.D. Cal. June 21, 2016) ("[T]he Executive Director for [the agency] . . . has standing to assert the [deliberative-process] privilege.") — it is less obvious that Defendants (as opposed to Garris) have standing to do so on the other ground they press — namely, that it "subjects a person to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv).  Thus, the Court declines to consider the Rule 45 issue in this case.  Instead, the parties shall promptly confer and submit letters, **not to exceed five single-spaced pages and within one week of the date of this Opinion and Order**, addressing (1) whether the Court should (a) deem Defendants to have made a Rule 45 motion to quash or modify the subpoena to Garris in the *Pirnik* action and (b) decide that motion based on the parties' briefing in this action or allow new or additional briefing (mindful that doing so will result in further delay); and (2)

whether Defendants have standing to challenge the subpoena on the ground that it "subjects a person to undue burden" within the meaning of Rule 45(d)(3)(A)(iv).

Whether Defendants can prevent Plaintiffs from deposing Garris by way of a Rule 45 motion in *Pirnik*, however, does not call for delaying the disposition of *this* case, in which Plaintiffs challenge Defendants' Denial Letter on the ground that it was arbitrary and capricious and in excess of statutory jurisdiction.  Because the Court concludes that the Denial Letter was both, Defendants' motion to dismiss or, in the alternative, for summary judgment, is DENIED, while Plaintiffs' cross-motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate Docket Nos. 23 and 25 and to close this case.

SO ORDERED.

Date:   August 16, 2018
        New York, New York

JESSE M. FURMAN
United States District Judge